Patrick **ELLIS**, Plaintiff–Appellant,

v.

Elaine L. **CHAO**, Secretary, United States Department of Labor, Defendant–Appellee.

No. 02–6002.

United States Court of Appeals, Second Circuit.

Argued: Nov. 20, 2002.

Decided: July 17, 2003.

Joseph P. Carey, Joseph P. Carey, P.C., Fishkill, New York (Annette G. Hasapidis, Law Offices of Annette G. Hasapidis, South Salem, New York, on brief), for Appellant.

Michael Krauss, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York and Jeffrey S. Oestericher, Assistant

United States Attorney, on brief) New York, New York, for Appellee.

Before: F.I. PARKER, STRAUB, and B.D. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge.

Appellant, Patrick Ellis ("Ellis"), appeals from a decision of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*) entered on December 10, 2001, denying his motion for summary judgment and his motion to amend his complaint, and granting the cross-motion for summary judgment of appellee, Secretary of Labor Elaine L. Chao (the "Secretary"). Ellis seeks a declaratory judgment invalidating a February 2000 election for Statewide Officers, Region Officers, and Statewide Board of Directors of the Civil Service Employees Association (the "CSEA" or the "union")[1], and an injunction compelling the Secretary to file a suit to set aside the election and then conduct and supervise a new one. Ellis also challenges the district court's denial of his motion to amend his complaint. We hold that the Secretary's decision not to initiate suit was not necessarily arbitrary and capricious, but that her Statement of Reasons is not sufficient for this Court to determine whether or not it was arbitrary and capricious within the meaning of the Labor–Management Reporting and Disclosure Act of 1959 (the "LMRDA").[2] We further hold that the district court abused its discretion when it denied Ellis' motion to amend. We therefore affirm the denial of summary judgment to Ellis, and vacate and remand both the grant of summary judgment to the Secretary and the district court's denial of Ellis' motion to amend.

## I. BACKGROUND

Ellis, a self-described "dissident" member of the CSEA, ran for state President of the CSEA against the incumbent president in the union's February 2000 election. Ellis, having lost, challenged the election. After exhausting his internal union remedies, he filed a complaint on June 22, 2000 with the Secretary pursuant to Section 402(a) of the LMRDA, 29 U.S.C. § 482(a). Section 402(a) allows a union member who has exhausted the internal remedies provided by his union to file a complaint with the Secretary alleging that a union election violated his rights under the LMRDA. The Secretary is then required to investigate the union member's complaint. *See* 29 U.S.C. §§ 482(b), 521.

In his complaint to the Secretary, Ellis alleged a broad range of improprieties in how the election was conducted, including, among other things, that: 1) union rules were violated by the improper listing of another candidate; 2) another candidate accepted improper campaign contributions; 3) an excessive number of ballots were mailed; 4) some members received the wrong ballot, no ballot, multiple ballots, and/or late ballots; 5) True Ballot, the independent balloting agency conducting the election, did not provide meaningful oversight of the election process; 6) voted ballots were not properly handled or secured;[3] 7) ballots were improperly count-

---

1. The CSEA is a union that primary represents state, county and municipal employees within the State of New York. It has approximately 191,000 members.

2. The LMRDA has also been known as the Landrum–Griffin Act and the Labor Reform Law.

3. Ellis emphasizes that CSEA employees were used to count the ballots. He claims that they were not properly supervised by True Ballot. Ellis contends that this was particularly troubling because he and the other candidates with whom he shared a slate had indicated that a number of union staff positions would be eliminated if they won office, and thus

ed and inaccurately tallied; 8) approximately 2,000 ballots in Ellis' favor were improperly discarded; and 9) the tallying process was not properly managed. In addition, Ellis alleged that his right to observe the ballot-counting process as required by the LMRDA was denied.[4] Ellis explained that election observers were restricted to a roped-off area in one corner of the room in which ballots were tallied, he was only allowed one observer, and he was not able to monitor the tallying at the various tables where it was taking place. Ellis also alleged that observers were not permitted to speak to anyone in the room other than the CSEA's general counsel and a True Ballot representative. In addition, he alleged that candidates were not permitted equal numbers of observers.

In a letter dated October 6, 2000, the Department of Labor officially informed Ellis that the Secretary had decided to dismiss his complaint.[5] The letter enclosed the Secretary's Statement of Reasons for Dismissing the Complaint (the "Statement of Reasons") which stated that the Secretary had investigated the complaint and decided to dismiss it. The Statement of Reasons explained that the vast majority of Ellis' allegations had not been substantiated, but that the Secretary had substantiated Ellis' allegation that observer rights guaranteed by the LMRDA were violated. Nevertheless, the Statement of Reasons stated that no further action would be taken by the Secretary.

Specifically, the Statement of Reasons explained that:

> The investigation revealed that the union denied candidates the right to effectively observe the election by adopting rules that allowed a candidate to have only one observer at the tally and restricting observers' view of the process. Observers were not able to see the names of the voters as voter eligibility was checked and were not able to verify the marks on the ballots to determine whether ballots were being tallied correctly. However, the investigation did not disclose evidence that this violation affected the election outcome in any way. There is no evidence of any election impropriety such as ineligible persons voting, ballot fraud or tally irregularities. Consequently, there is no probable cause to believe that this violation had an effect on the outcome of the election.

The Statement of Reasons explained that, therefore, the Department of Labor was "closing our file on this matter."

Ellis contends that the Secretary's refusal to file suit was arbitrary and capricious because the Secretary found that observer rights guaranteed by the LMRDA had been violated but failed to challenge the CSEA election. The Secretary counters that her Statement of Reasons satisfies the requirements of the LMRDA and that her refusal to file suit was not arbitrary and capricious.

CSEA employees allegedly had a vested interest in the outcome of the election.

4. *See* 29 U.S.C. § 481(c) ("Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."); 29 C.F.R. § 452.107(a) "[E]ach candidate must be permitted to have an observer (1) at the polls and (2) at the counting of the ballots.... If ballots are being

counted at more than one location or at more than one table at a single location, a candidate is entitled to have as many observers as necessary to observe the actual counting of ballots."

5. Ellis had actually learned of the Secretary's determination more than two months earlier when he had called the Department to inquire as to the status of his complaint.

## II. DISTRICT COURT PROCEEDING

Ellis commenced this action on January 12, 2001 seeking an order declaring that the improper restrictions on observers found by the Secretary affected the outcome of the February 2000 election, setting aside the election, and requiring the Secretary to conduct a new election under her supervision. After the Secretary answered the complaint, the parties crossmoved for summary judgment. While the cross-motions were pending, Ellis moved to amend his complaint by adding five paragraphs, each of which stated that the Secretary had failed to substantiate one of his allegations. According to Ellis, this motion to amend was motivated by the Secretary's argument that by failing to challenge the Secretary's findings as to those allegations, Ellis had admitted that the allegations were unfounded.

The district court denied Ellis' motion to amend his complaint as futile because the court determined that under *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975),[6] it did not have the power to inquire into the factual bases for the Secretary's conclusions. *See Ellis v. Chao*, No. 01 CIV. 0280(SHS), 2001 WL 1550809, at *3 (S.D.N.Y. Dec.5, 2001).

The district court then considered the parties' competing motions for summary judgment, and found that there was no genuine issue of material fact. The district court found the Statement of Reasons sufficient to show that the Secretary did not act in an arbitrary and capricious manner. It reasoned that improper restrictions on election observers have never

been found to *per se* mandate the Secretary's intervention. *Id.* at *4.

The district court also rejected Ellis' argument that the Secretary's decision not to challenge the CSEA election violated his right to equal protection as set forth in *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). It reasoned that there was "no evidence that the Secretary's actions had the effect of 'valuing one person's vote over that of another.' " *Ellis*, 2001 WL 1550809, at *4 (quoting *Bush*, 531 U.S. at 104–05, 121 S.Ct. 525)(internal formatting omitted). It also questioned whether *Bush* would apply to internal union elections.[7] Based on these conclusions, the district court granted the Secretary's motion for summary judgment and denied Ellis' motion for summary judgment.

## III. DISCUSSION

A. *The district court improperly granted summary judgment to the Secretary, but properly denied summary judgment to Ellis.*

1. The Secretary must initiate suit under the LMRDA when she finds that unlawful election irregularities may have affected the election's outcome.

Ellis argues that the Secretary's decision not to challenge the CSEA election was arbitrary and capricious. To evaluate this argument, we must first determine under what circumstances the Secretary is required to sue, so that we may evaluate whether or not her decision not to sue may have been arbitrary and capricious under the facts of this case.

---

6. *Dunlop* was partially overruled on grounds not relevant to this opinion by *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 550 n. 22, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

7. Ellis does not challenge this ruling on appeal, although he does argue that had he been able to properly observe the election, he might have been able to present the Secretary with evidence that his voters were denied equal protection as compared to voters for the incumbent president.

■ The Secretary does not have unlimited discretion to decide whether or not to bring an action challenging a union election. In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court characterized the LMRDA as a statute that "quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power." *Id.* at 834, 105 S.Ct. 1649. Thus, the Secretary's decision not to initiate suit is reviewable to determine whether it is arbitrary and capricious. *See Dunlop*, 421 U.S. at 571–73, 95 S.Ct. 1851.

The language of the LMRDA makes it clear that the Secretary is sometimes required to file suit to set aside a union election. The LMRDA states that "if [the Secretary] finds probable cause to believe that a violation ... occurred and has not been remedied, [the Secretary] shall, within sixty days after the filing of such complaint, bring a civil action ...." 29 U.S.C. § 482(b). The word "shall" indicates that under certain conditions, the Secretary must initiate a civil action challenging a union election. The Supreme Court has recognized the mandatory nature of the provision. In *Heckler*, the Supreme Court explained that in *Dunlop*, it had relied upon the court of appeal's analysis that "the language of the LMRDA indicated that the Secretary was required to file suit if certain 'clearly defined' factors were present." *Heckler*, 470 U.S. at 834, 105 S.Ct. 1649 (quoting *Bachowski v. Brennan*, 502 F.2d 79, 87–88 (3d Cir.1974)).

■ The Supreme Court has indicated that the Secretary need not file suit to set aside an election if the suit would be futile or merely "might be successful." *Dunlop*, 421 U.S. at 574, 95 S.Ct. 1851. Rather, the Secretary need only sue when she subjectively thinks the suit will be successful:

'As a matter of law the Secretary is not required to sue to set aside the election whenever the proofs before him suggest the suit might be successful. There remains in him a degree of discretion to select cases and it is his subjective judgment as to the probable outcome of the litigation that must control.'

*Id.* at 572, 95 S.Ct. 1851 (quoting *DeVito v. Shultz*, 72 L.R.R.M. 2682, 2683 (D.D.C.1969))(internal formatting omitted). However, it is important to note that such a suit will succeed where a court finds, upon a preponderance of the evidence, that the violation "*may have affected* the outcome of an election." 29 U.S.C. § 482(c)(emphasis added). Accordingly, *Dunlop* instructs that the Secretary must sue where she finds that the violation may have affected the outcome of the election. This interpretation—that the Secretary must sue whenever her investigation leads her to conclude that the outcome of a union election may have been affected by unlawful election irregularities—is consistent with *Dunlop*'s assumption that if the Secretary did not sue it would be either because "no violations occurred or ... they did not affect the outcome of the election." *Id.* at 573, 95 S.Ct. 1851.[8]

**8.** Arguably, *Dunlop* might also seem to suggest that the Secretary may only initiate suit when she determines that the violation or violations "probably" affected the election's outcome. In *Dunlop* the Supreme Court favorably cited *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), stating:

*Bottle Blowers* construed § 482(b) ... as conferring upon the Secretary discretion to

determine both the probable violation and the probable *effect*. '[T]he Secretary may not initiate an action until [her] own investigation confirms that a violation ... probably *infected* the challenged election.'

*Dunlop*, 421 U.S. at 570, 95 S.Ct. 1851 (quoting *Bottle Blowers*, 389 U.S. at 472, 88 S.Ct. 643) (emphasis added). *See also Hall v. Marshall*, 476 F.Supp. 262, 265 (E.D.Pa.1979), aff'd by *Hall v. Marshall*, 622 F.2d 578 (3d

█ Requiring the Secretary to initiate suit when she determines that election procedures which violated the LMRDA may have affected the outcome of an election is consistent with the Secretary's role in such litigation. The Secretary has exclusive authority to bring suit to set aside elections which violate Title IV of the LMRDA, the section of the LMRDA which regulates union elections. *See Local No. 82, Furniture & Piano Moving v. Crowley,* 467 U.S. 526, 549, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). A union member is not permitted to initiate suit on his own behalf, but rather must rely upon the Secretary to initiate suit to protect his rights. In this manner, the "Secretary's role [is] as lawyer for the complaining union member." *Dunlop,* 421 U.S. at 572, 95 S.Ct. 1851. While the Secretary does not have a "duty to indulge a client's usual prerogative to direct his lawyer to file suit", *id.,* she nevertheless does have a duty to protect the union member's legitimate right to a fair election.

This interpretation is also consistent with the Secretary's own regulation, 29 C.F.R. § 452.5, which states that "[s]ince the remedy under section 402 [of the LMRDA] is contingent upon a finding by the court ... that the violation 'may have affected the outcome of an election[,]' the Secretary as a matter of policy will not file suit to enforce the election provisions unless the violations found are such that the outcome may have been affected." 29 C.F.R. § 452.5 (citing *Dunlop,* 421 U.S. at 570, 95 S.Ct. 1851).

Finally, this interpretation is consistent with the standard that must be met to set aside an election under the LMRDA. The LMRDA states that "[i]f, upon a preponderance of the evidence after a trial upon the merits, the court finds ... that the violation of section 481 of this title *may have affected* the outcome of an election, the court shall declare the election ... to be void and direct the conduct of a new election under supervision of the Secretary ...." 29 U.S.C. § 482(c) (emphasis added). *See also Wirtz v. Hotel, Motel and Club Emp. Union, Local 6,* 391 U.S. 492, 506–08, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (new election required where there was a logical inference that the violation "may have affected" an election's outcome and no "tangible evidence" to contradict that inference).

To require the Secretary to satisfy a higher standard to initiate suit than would need to be satisfied for the Secretary to prevail in court would be to effectively re-write the standard. This would be particularly problematic given that the "may have affected" standard was the result of a deliberate policy choice by Congress. In *Hotel, Motel, and Club Employees,* the Supreme Court explained that:

> The 'may have affected' language appeared in the bill passed by the Senate,

---

Cir.1980) (citing *Dunlop* for the proposition that "if [the Secretary] finds probable cause to believe that Title IV has been violated and that the violation probably affected the outcome of the election, he may file suit against the union ....").

However, the term "effect" is not synonymous with "infect," and the latter can simply mean to "invade." *See* American Heritage Dictionary of the English Language, 4th Ed., Houghton Mifflin Co. (2000). Moreover, the reference talks about the election in general being "infected," and not merely the result or outcome of the election. *But see Harrington v. Chao,* 280 F.3d 50, 53 (1st Cir.2002) (stating that "[i]f [the Secretary] determines that there is probable cause to believe that ... the violation probably infected the *outcome* of the election, she must bring suit") (emphasis added). Looking at the reference in context of the decision as a whole, we think the reference to *Bottle Blowers* merely explains that the Secretary is to determine what probably happened, and that the Secretary may not initiate suit where she believes that the LMRDA was not violated.

S.1555. The bill passed by the House, H.R. 8342, and the Kennedy–Ervin bill introduced in the Senate, S. 505, required the more stringent showing that the violation actually 'affected' the outcome. The difference was resolved in conference by the adoption of the 'may have affected' language.

391 U.S. at 505–06, 88 S.Ct. 1743 (citations omitted). The House report outlining the changes made by the conference committee was quite clear on this point, explaining that "[i]n subsection (c) of section 402, the conference substitute adopts the provision of the Senate bill that directs the court to set aside an election if the violation 'may have' affected the outcome. Under the House amendment an election could be set aside only if the violation did affect the outcome." H.R. Rep. No. 1147, 86th Cong., 1st Sess. 35 (1959).

■ For the above reasons, we hold that the Secretary is required to initiate suit under the LMRDA when she finds that unlawful election irregularities *may have affected* the election's outcome. This is consistent with the Supreme Court's view that it is the Secretary's "subjective judgment as to the probable outcome of the litigation that must control" her decision as to whether or not to file such a suit. *Dunlop*, 421 U.S. at 572, 95 S.Ct. 1851. We now turn to the Secretary's Statement of Reasons to determine whether or not her decision not to initiate suit in the case at hand was arbitrary and capricious.

2. The Secretary's Statement of Reasons is not sufficient for this Court to determine whether or not her decision not to initiate suit was arbitrary and capricious.

■ When the Secretary decides not to initiate suit, she must provide a Statement of Reasons that sets forth the essential facts upon which her inferences are based. *Dunlop*, 421 U.S. at 573–74, 95 S.Ct. 1851 ("[A]lthough detailed findings of fact are not required, the statement of reasons should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based.") A Statement of Reasons which rests on conclusory statements is not sufficient. *See Donovan v. Local 6, Washington Teachers' Union, AFL–CIO*, 747 F.2d 711, 719 (D.C.Cir.1984) ("The conclusory assertion that [there is] 'no evidence' ... simply is not 'adequate to enable the court to determine whether the ... decision was reached for an impermissible reason or for no reason at all.'") (quoting *Dunlop*, 421 U.S. at 573, 95 S.Ct. 1851); *Usery v. Local Union No. 639 Intern. Brotherhood of Teamsters Chauffeurs, Warehousemen and Helpers of Am.*, 543 F.2d 369, 379 (D.C.Cir.1976) ("Of course, the Secretary's reasons for certification cannot rest on unsubstantiated conclusions ....")

Such conclusory statements not only prevent the courts from undertaking meaningful judicial review of the Secretary's decision, but also reduce the overall utility of the Statement of Reasons itself. As Judge Friendly explained:

> A written statement of reasons, almost essential if there is to be judicial review, is desirable on many other grounds. The necessity for justification is a powerful preventive of wrong decisions. The requirement also tends to effectuate intra-agency uniformity .... A statement of reasons may even make a decision somewhat more acceptable to a losing claimant.

*See* Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1292 (1975) (exploring hearing requirements as they apply in a variety of contexts) (footnotes omitted). Similarly, in *Dunlop*, the

Supreme Court explained that "a 'reasons' requirement promotes thought by the Secretary and compels him to cover the relevant points and eschew irrelevancies, and ... the need to assure careful administrative consideration 'would be relevant even if the Secretary's decision were unreviewable.'" 421 U.S. at 572, 95 S.Ct. 1851 (quoting *Bachowski*, 502 F.2d at 88–89, n. 14). *See also Exxon Pipeline Co. v. United States*, 725 F.2d 1467, 1473 (D.C.Cir. 1984) (discussing the benefits of Statements of Reasons in general).

In the case at hand, the entire text of the Statement of Reasons is six single-spaced pages, most of which has little to do with the Secretary's decision not to bring suit. As previously noted, the only part of the Statement of Reasons which discusses why the Secretary decided not to sue despite finding a violation of the LMRDA states that:

> [T]he investigation did not disclose evidence that this [observer] violation affected the election outcome in any way. There is no evidence of any election impropriety such as ineligible persons voting, ballot fraud or tally irregularities. Consequently, there is no probable cause to believe that this violation had an effect on the outcome of the election.

The Statement of Reasons also never states the Secretary's conclusion as to what was the true vote tally for the election,[9] does not indicate whether the Secretary's investigators tallied the ballots themselves, makes no mention of Ellis' allegation that 2093 votes in his favor were improperly discarded, and never makes any reference to the fact that CSEA employees and the CSEA's counsel participated in counting the ballots.[10] Thus, the Statement of Reasons' explanation for the Secretary's conclusion as to the effect of the observer rights violation, and her decision not to challenge the election, is obviously conclusory.

We find that the Statement of Reasons is not sufficient for this Court to be able to determine whether the Secretary acted in an arbitrary and capricious manner when she decided not to challenge the CSEA election despite finding that observer rights protected by the LMRDA were violated. The Secretary states that there was no evidence that the observer rights violation had an effect on the outcome of the election, but does not explain where or to what extent she looked for such evidence. She merely refers to an undefined "investigation." The only reference to how the investigation was conducted in regards to Ellis' observer rights violation allegation is in the cover letter accompanying the Statement of Reasons. Even if we were to look at the cover letter,[11] that letter merely states that the investigation was conducted in accordance with sections 402 and 601 of the LMRDA.[12] Section 402

9. We note that it is unclear from the record what the official vote tally was. Ellis states at one point that he lost by a vote count of 11,231 to 19,271, but then states that the vote count in his favor dropped from 15,800 to 13,707 when the 2093 ballots at issue were rejected as junk without further explanation.

10. *Compare Dunlop*, 421 U.S. at 578–589, 95 S.Ct. 1851 (appendix to the opinion consisting of the Secretary's Statement of Reasons in that case, a statement which: 1) explained the scope and manner of the Secretary's investigation; 2) explained the rationale and as-

sumptions behind the investigation; and 3) provided tallies of the maximum number of votes that might have been affected by each violation found to have occurred).

11. We do not reach the question of whether considering the cover letter, which is not technically part of the Statement of Reasons, would be within the proper scope of this Court's review.

12. Presumably, the Secretary is referring to the sections as numbered in the original legislation passed by Congress, and not the sec-

of the LMRDA, 29 U.S.C. § 482, merely states that the Secretary "shall investigate" union member complaints but does not state what such investigations can or should entail. See 29 U.S.C. § 482(b). Section 601 of the LMRDA, 29 U.S.C. § 521, states what the Secretary is empowered to do as part of her investigation (e.g., the Secretary "may enter such places and inspect such records and accounts and question such persons as [she] may deem necessary"), but does not say what the Secretary must (or even should generally) do as part of an investigation. See 29 U.S.C. § 521. Accordingly, the Secretary's reference to those sections does not provide this Court with any meaningful information about how the investigation was conducted in this case.

Without more, we cannot know whether the Secretary was acting in an arbitrary and capricious manner. She states that she decided not to initiate suit because she did not find evidence that the violation of the LMRDA affected the outcome of the CSEA election, but we do not know where or the extent to which she looked for such evidence. We simply cannot determine whether or not the manner in which the Secretary acted was arbitrary and capricious without first knowing in what manner the Secretary acted.[13] This is particularly true given that the Secretary found a

violation and thus there is at least some reason to suspect that the election's outcome may have been affected.

The Statement of Reasons is also inadequate because it both does not address Ellis' allegation that 2093 ballots in his favor were improperly excluded from the final vote tally, and does not state the Secretary's determination as to the final vote tally.[14] Unless the Secretary determined that there was a gap of more than 2093 votes between the candidates for CSEA president, she could not reasonably have determined that excluding 2093 votes in Ellis' favor could not have affected the election. Accordingly, she would have needed to assess the veracity of Ellis' allegation that 2093 votes were improperly excluded in order to know whether or not to initiate suit. The Statement of Reasons provides no indication that she did so.

In addition, it is unclear from the Secretary's Statement of Reasons whether or not she applied the correct standard when deciding not to initiate suit. The Secretary concluded that "there is no probable cause to believe that this violation had an effect on the outcome of the election."[15] Stating that there is no probable cause to believe that something has happened is different from stating that one does not believe that something may have hap-

---

tions as numbered in the United States Code, as 29 U.S.C. § 402 is merely the definitions section for the LMRDA and does not define what constitutes an investigation, and 29 U.S.C. § 601 was repealed long before October 2000 when the Statement of Reasons was distributed.

13. Ellis alleges that the "Secretary simply credited the union's claims that no (other) improprieties had occurred."

14. The Statement of Reasons indicates that the Secretary's investigators counted the total number of ballots. This does not indicate, however, that they checked the tallies. Simi-

larly, the Secretary's statement that "[t]here is no evidence of … tally irregularities" does not indicate that her investigators ever personally checked those tallies.

15. In her brief before this Court, the Secretary also refers to her conclusion as a conclusion that "there was no probable cause to believe that these restrictions may have affected the outcome." In determining whether her decision was arbitrary and capricious we are limited to examining the conclusion described in her Statement of Reasons, a conclusion which notably did not include the words "may have."

pened. The Secretary's other stated reason for her decision not to sue, that "the investigation did not disclose evidence that this violation affected the outcome in any way," also does not indicate that she applied the correct standard. The non-existence of specific evidence of an effect would not preclude the Secretary from determining that an effect may have occurred. In reaching her "subjective judgment as to the probable outcome of the litigation," *Dunlop*, 421 U.S. at 572, 95 S.Ct. 1851 it is not clear whether the Secretary considered that at trial against the union, if she proved by the preponderance of the evidence that the violation "may have affected" the outcome of the election, she would prevail in the absence of "tangible evidence" to the contrary from the union. *See* 29 U.S.C. § 482(c); *Hotel, Motel, and Club Employees*, 391 U.S. at 506–07, 88 S.Ct. 1743. As such, the Secretary may not have asked whether the observer violations merely "may have affected" the outcome of the CSEA election, but rather may have applied a more stringent standard. However, even if we were to find that the Secretary applied the correct standard, we would not affirm the grant of summary judgment to the Secretary because of the Statement of Reasons' other defects. Accordingly, we need not decipher the Secretary's ambiguous wording to determine whether or not the Secretary applied the correct standard. The Secretary will have the opportunity to clarify what standard she used upon remand.

In sum, the district court erred in granting summary judgment to the Secretary. On remand, a more in-depth Statement of Reasons should be required from the Secretary so that the district court may provide meaningful judicial review of her determination. *See Dunlop*, 421 U.S. at 574, 95 S.Ct. 1851 ("Where the statement inadequately discloses his reasons, the Secretary may be afforded opportunity

to supplement his statement"); *Brodsky v. Herman*, 120 F.Supp.2d 347, 350 (S.D.N.Y. 2000) ("If the court determines that the Secretary's decision was arbitrary and capricious, the Secretary may be ordered to reopen consideration of Plaintiff's former complaint and to supplement her Statement"); *Harrington v. Chao*, 280 F.3d 50, 61 (1st Cir.2002).

3. Ellis' argument that the Secretary's decision was necessarily arbitrary and capricious because it represents a change from her prior litigation positions is unavailing.

Ellis' argument that the Secretary's decision was arbitrary and capricious because it was contrary to her long-standing litigation position fails because this Court has been presented with no evidence that the Secretary's position is inconsistent with prior litigation positions taken by the Secretary of Labor. In all three cases cited by Ellis to demonstrate such inconsistency, the Secretary substantiated allegations of not only violations of observer rights, but also of other election improprieties. *See Hodgson v. Local 734, Int'l Brotherhood of Teamsters*, 336 F.Supp. 1243 (N.D.Ill.1972) (suit to set aside an election in which observers were not able to effectively observe, *and* the union failed to retain a number of ballots and related papers recording who had voted); *Hodgson v. United Mine Workers*, 344 F.Supp. 17 (D.D.C.1972) (suit to set aside an election in which restrictions on observers were only one of many violations of the LMRDA that the Secretary had substantiated); *Marshall v. Local 135, Laborers' Int'l Union*, 106 L.R.R.M. 2500 (E.D.Pa. 1980) (suit to set aside an election where, in addition to violations of observer rights, the Secretary found significant physical evidence that ballot tampering and manipulation had occurred). Accordingly, Ellis

is not entitled to summary judgment on this basis.

Moreover, even if the Secretary could be said to be departing from her prior positions, her decision would not necessarily be arbitrary and capricious. Ellis cites precedent from other circuits for the proposition that when an administrative agency departs from its prior position a more in-depth Statement of Reasons for its actions is required. *See Harrington v. Chao*, 280 F.3d 50 (1st Cir.2002); *Doyle v. Brock*, 821 F.2d 778 (D.C.Cir.1987). However, neither case found that a deviation was *per se* arbitrary and capricious and we find no reason to believe that it would be. Nevertheless, to the extent that a more detailed Statement of Reasons might be necessary to justify any inconsistent positions, the Secretary may address that on remand.

4. Ellis' argument that the Secretary's decision was necessarily arbitrary and capricious given that she found that observer rights were violated is unavailing.

■ Ellis' argument that the Secretary's decision was arbitrary and capricious because the Secretary simply could not have found—given the lack of effective observers—that the violations did not affect the election's outcome also fails. We find no support for Ellis' suggestion that it would never be possible for the Secretary to legitimately reach the conclusion that observer violations occurred but could not have affected the outcome of a given election. While we decline to speculate as to the various circumstances under which such a conclusion would be reasonable, we have no reason to believe that such circumstances could not exist. Accordingly, in order to determine whether the Secretary's determination was necessarily arbitrary and capricious given her finding, we would need to determine whether the Secretary's factual basis was sufficient to support her conclusion in this particular case.

■ A court may only consider challenges to the factual basis of the Secretary's decision in the "rare case" in which the Secretary: 1) declares that she will no longer enforce Title IV or "otherwise completely abrogate[s][her] enforcement responsibilities . . ."; or 2) prosecutes complaints "in a constitutionally discriminatory manner;" or 3) makes decisions that are "plainly beyond the bounds" of the LMRDA or "clearly defiant" of it. *Dunlop*, 421 U.S. at 574, 95 S.Ct. 1851.

Until we are able to determine that this is a "rare case" within the meaning of *Dunlop*, we may not review the factual basis for the Secretary's decision. *See Dunlop*, 421 U.S. at 573, 95 S.Ct. 1851 (stating that except in a rare case, judicial "review may not extend to cognizance or trial of the complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election."). If the Secretary in fact acted in an arbitrary and capricious manner, such actions could have been "clearly defiant" of the Act. However, as discussed above, the Secretary's Statement of Reasons is not sufficient for this Court to determine whether or not she acted in an arbitrary and capricious manner. Thus, we cannot know whether this case presents such a "rare case," and it would be premature for this Court to consider the factual basis for the Secretary's decision without a more complete Statement of Reasons. Accordingly, the district court did not err in denying summary judgment to Ellis on the basis of the record then before the district court.

B. *The district court abused its discretion in denying Ellis' motion to amend.*

■ Ellis sought leave to amend his complaint, which the district court denied

as futile. We review the district court's denial for abuse of discretion. *See Kropelnicki v. Siegel,* 290 F.3d 118, 130 (2d Cir. 2002).

■ Under Fed.R.Civ.P. 15(a), leave to amend a complaint should be "freely given when justice so requires." *Id.* However, it is well established that leave to amend a complaint need not be granted when amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999) (holding that "a district court may properly deny leave when amendment would be futile."). As previously explained, the district court denied the motion to amend as futile because it found that it was not permitted to consider the factual bases for the Secretary's decision except insofar as they were stated in the Secretary's Statement of Reasons.

As we observed above, we may only look outside the four corners of the Statement of Reasons to scrutinize the factual basis of the Secretary's decision in the "rare" case in which the Secretary: 1) declares that she will no longer enforce Title IV or "otherwise completely abrogate[s][her] enforcement responsibilities . . ."; or 2) prosecutes complaints "in a constitutionally discriminatory manner;" or 3) makes decisions that are "plainly beyond the bounds" of the LMRDA or "clearly defiant" of it. *Dunlop,* 421 U.S. at 574, 95 S.Ct. 1851. Ellis argues that amendment would not have been futile because the Secretary acted in an arbitrary and capricious manner

and thus this is a "rare case" within the meaning of *Dunlop.*

If the Secretary in fact acted in an arbitrary and capricious manner, such actions could have been "clearly defiant" of the LMRDA and thus amendment would not have been futile. However, as previously discussed, to determine whether the Secretary acted in such a manner we must look to the Statement of Reasons which, unfortunately, is inadequate for this Court to be able to make that determination. Given that there is a possibility that the Secretary has engaged in actions which are "clearly defiant" of the LMRDA, however, amendment would not necessarily have been futile and it was an abuse of discretion not to allow Ellis to amend his complaint to add the five proposed paragraphs.[16]

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the denial of summary judgment to Ellis, and VACATE and REMAND the grant of summary judgment to the Secretary. We also VACATE and REMAND the district court's denial of Ellis' motion to amend. On remand, the district court should require a more substantive Statement of Reasons from the Secretary explaining not only what the Secretary's ultimate determination was, but also the process that led to, and the basis for, that decision.

■

**16.** We note that the government also argues that the motion was properly denied because Ellis' additional allegations were "far too conclusory." Each of Ellis' additional paragraphs states that the Secretary failed to substantiate a particular one of Ellis' allegations. The Secretary seems to feel that the additional allegations are "conclusory" because the amendments do not allege additional facts that would allow this Court to conclude that the Secretary acted in an irrational or arbitrary manner in failing to substantiate those claims. However, these proposed amendments merely state that certain of Ellis' allegations were not substantiated by the Secretary, which is not disputed.