21-964-cv
*Paushok v. Ganbold*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

   **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-two.**

PRESENT:
   BARRINGTON D. PARKER,
   JOSEPH F. BIANCO,
   EUNICE C. LEE,
    *Circuit Judges.*

-------------------------------------------------------------------

SERGEY VIKTOROVICH PAUSHOK,

   *Plaintiff-Appellant,*

  v.              21-964-cv

TORDAI GANBOLD, BATZORIG BAATAR,
GAZPROMBANK JSC, MR. OLEG
TITARENKO, VLADIMIR PROTASOV,
ALEXANDER MURANOV,

   *Defendants-Appellees.*\*

-------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:  KEVIN F. MURPHY, Wuersch & Gering LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:  MITCHELL J. GELLER (Warren E. Gluck, Elliot A. Magruder, *on the brief*), Holland & Knight LLP, New York, NY (*for* Batzorig Baatar, Gazprombank

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

JSC, Mr. Oleg Titarenko, Vladimir Protasov, and Alexander Muranov).

Eric Bradley Weinick, Otterbourg P.C., New York, NY (*for* Tordai Ganbold).

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Cronan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-Appellant Sergey Viktorovich Paushok appeals from the district court's March 18, 2021 order and judgment dismissing with prejudice his complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## BACKGROUND

Paushok brings claims under the Fair Debt Collection Practices Act ("FDCPA") and New York General Business Law ("GBL") § 349. The purported "debt" at issue originated in 2006 when Paushok served as the Chief Executive Officer and beneficial owner of Golden East Mongolia ("GEM"), a mining company. On February 9, 2006, defendant-appellee Gazprombank JSC ("GPB") executed an agreement to loan $30 million to GEM, which was due to be repaid by September 30, 2008 (the "Loan Agreement"). That same day, Paushok executed a surety agreement through which he became personally and secondarily liable if GEM failed to fulfill its liabilities to GPB (the "Surety").

2

Paushok claims that he was forced to sell GEM in 2011 for significantly less than it was worth because GEM's mining operations eventually became unsustainable. As part of a 2011 agreement (the "Share Purchase Agreement"), defendant-appellee Tordai Ganbold purchased GEM's assets and liabilities—including the 2006 Loan Agreement and Surety—from GEM and Paushok through a corporation, Phoenix Sino Limited. Paushok was paid approximately $20 million for the sale, even though he valued GEM at approximately $2 billion.

Paushok alleges that Ganbold and two employees of GPB, defendants-appellees Oleg Titarenko and Vladimir Protasov, then concocted a scheme whereby GEM, under Ganbold's control, defaulted on the loan due to GPB. Even though the debt had been sold to Phoenix Sino Limited in the Share Purchase Agreement, Paushok claims that GPB invoked the Surety and attempted to hold Paushok personally responsible for repaying the loan anyway.

To collect this debt, GPB brought suit against Paushok in the Cheremushki District Court of Moscow in September 2011. When Paushok did not appear in that action, a default judgment was entered against him, ordering him to pay approximately $25 million to GPB. Following affirmance of the default judgment by a Russian appellate court, GPB sought to enforce the Russian judgment by initiating an Article 53 proceeding in New York Supreme Court on January 6, 2015. GPB again prevailed when the Supreme Court awarded summary judgment to GPB's assignee, Batbrothers LLC, and dismissed Paushok's counterclaims. *See Batbrothers LLC v. Paushok*, 2018 N.Y. Slip. Op. 33041, 2018 WL 6309075 (N.Y. Sup. Ct. Dec. 3, 2018). The Appellate Division, First Department thereafter affirmed, *see Batbrothers LLC v. Paushok*, 101 N.Y.S.3d 297 (1st Dep't 2019), and the Court of Appeals denied Paushok's motion to appeal, *see Batbrothers LLC v. Paushok*, 35 N.Y.3d 902 (2020).

Subsequently, Paushok sought relief in federal court by bringing the instant action. He alleges that the Article 53 proceeding constituted a "fraud on the New York Supreme Court" because his adversaries prepared and submitted "false documents and false affidavits . . . allegedly evidencing that Plaintiff was responsible for a debt that did not exist." Joint App'x at 10–11, 22. Specifically, Paushok brings claims under the FDCPA and GBL § 349, and alleges that "[t]o collect a fictitious debt from Plaintiff that does not exist, Defendant GPB has acted in a manner to harass, oppress and abuse Plaintiff, including: a) threatening physical harm to the person of Plaintiff; b) causing actual harm to the reputation of Plaintiff; and c) repeatedly attempting to bring criminal actions against Plaintiff." Joint App'x at 29.

The district court dismissed the action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, finding that while the district court had subject matter jurisdiction over Paushok's claims, Paushok "failed to plausibly plead a claim upon which relief can be granted because he has not alleged a consumer debt that falls within the scope of the FDCPA." *Paushok v. Ganbold*, 20 Civ. 4769, 2021 WL 1063206, at *1 (S.D.N.Y. Mar. 18, 2021). The district court then declined to exercise supplemental jurisdiction over Paushok's remaining GBL § 349 claim and dismissed that claim without prejudice.[1] This appeal followed.

## DISCUSSION

We review a dismissal pursuant to Rule 12(b)(6) *de novo* and accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). We agree with the district court that Paushok failed to plead a cognizable FDCPA claim because he did not plausibly allege the existence of a *consumer* debt that would be covered by the protections of the statute. Indeed,

---

[1] Paushok does not appeal that dismissal of his state law claim.

the allegations in the complaint make clear that the claim arises from a *commercial* debt— namely, the 2006 Surety signed by Paushok—that cannot form the basis of an FDCPA claim as a matter of law.

As we have explained, "[w]hat matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Beauvoir v. Israel,* 794 F.3d 244, 248 (2d Cir. 2015) (internal quotation marks omitted). The FDCPA "applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (summary order) (internal quotation marks and citation omitted). The statute defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see also Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (per curiam) ("[A]t a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.") (internal quotation marks omitted). Therefore, "actions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212–13 (2d Cir. 2017).

Here, Paushok's conclusory assertion that the purported debt arose from a consumer transaction, rather than a commercial one, is insufficient to support a viable claim under the FDCPA. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (internal quotation marks, alterations, and citation omitted); *accord Scarola*

5

*Malone & Zubatov LLP*, 638 F. App'x at 103 (rejecting conclusory allegation and holding that "[plaintiff] did not include any factual allegations in his Complaint to support the inference that the amount in dispute arose from a consumer transaction, and, accordingly, he failed to state a claim upon which relief could be granted").

Paushok alleges that the court cases brought against him in Russia and New York, as well as the associated harassment that took place while those actions were ongoing, violated the FDCPA. These lawsuits were aimed at recovering debt that originated in the 2006 Loan Agreement between GEM and GPB and the accompanying Surety executed by Paushok, under which Paushok personally guaranteed GEM's obligations under the Loan Agreement. The allegations detailed in his complaint, as well as the terms of each agreement, make clear that these agreements concerned commercial matters that are outside the ambit of the FDCPA because they indisputably are not "primarily for personal, family, or household purposes."[2] 15 U.S.C. § 1692a(5).

The complaint describes the Loan Agreement and Surety in connection with GEM's commercial purposes for its "gold-mining enterprise in Mongolia" and details how GEM pledged its "equipment assets" and "mining licenses and mineral exploitation licenses" to secure the loan. Joint App'x at 13. The text of the underlying agreements themselves confirm this characterization of their commercial nature. *See, e.g.*, Joint App'x at 314 ("Loan (in the form of a facility) will be provided to the Borrower for acquisition of fixed assets and replenishment of working capital.");

---

[2] Though the agreements were submitted as attachments to the motion to dismiss and not the complaint, Paushok relied upon their terms and effects throughout his complaint. Documents that are "integral" to a complaint are "a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). Because these agreements were integral to Paushok's complaint, they were properly considered by the district court in granting the motion to dismiss.

Joint App'x at 331 ("The Guarantor will assume joint and several liability to the Lender for fulfillment by Golden East Mongolia (Limited Liability Company) . . . of the Debtor's liabilities to the Lender under Facility Agreement."). Debt to acquire fixed assets and replenish working capital for a mining enterprise is not debt undertaken for "personal, family, or household purposes." 15 U.S.C. § 1692a(5). Therefore, any claims related to alleged wrongful conduct in connection with attempts to collect on the debt arising from the Loan Agreement and Surety are simply not actionable under the FDCPA.

In his appellate brief, Paushok concedes that these agreements related to commercial, rather than consumer, debt. *See, e.g.*, Appellant's Br. at 3 ("GPB insisted on a personal guaranty from Plaintiff, which Plaintiff signed in 2006. GEM made regular payments on *this commercial debt* until the imposition of the Anti-Foreigner Decrees." (internal citations omitted) (emphasis added)). Therefore, in an attempt to save his FDCPA claim, Paushok argues that the debt transformed into a new *consumer* debt through the Share Purchase Agreement in 2011 because he received $20 million for his "personal use" in that transaction. Appellant's Br. at 18. He also argues that when GPB continued to invoke the Surety against him in pursuit of repayment, even after he sold the Surety as part of the Share Purchase Agreement, a new debt was being collected against him— debt that he characterizes as consumer, rather than commercial, in nature and describes as a "bonus." Appellant's Br. at 18.

Paushok's arguments are unavailing. First, his allegations as to the conduct that violated the FDCPA concern activity in connection with the Russia and New York lawsuits. These actions attempted to recover money Paushok owed through the 2006 Loan Agreement and Surety, not the $20 million paid to Paushok in the 2011 Share Purchase Agreement. In addition, even accepting the allegations in the complaint as true, the Share Purchase Agreement did not create any new debt

7

obligations in connection with the $20 million payment. Instead, according to the complaint, the Share Purchase Agreement merely transferred ownership of the existing commercial debt that originated in the 2006 Loan Agreement and Surety from Paushok to Phoenix Sino Limited. In particular, as the complaint described the transaction, Paushok sold "the liabilities in both the Loan Agreement [and] Surety" to Phoenix Sino Limited, and Paushok "resolve[d] any residual obligations [he] had under the Surety" because "[t]he Surety obligations were listed among the liabilities of the Loan Agreement." Joint App'x at 16. Because the underlying debt remained commercial in nature even when it changed owners, any challenged activity in connection with the collection of this debt falls outside of the protections of the FDCPA.

The tenuousness of Paushok's position that the Share Purchase Agreement created a new obligation is highlighted by his characterization of the agreement as "a de facto loan," rather than an actual loan, and his description "that Defendants did not specifically refer to the transfer of these funds as a 'debt' or 'obligation' per se." Appellant's Br. at 18. Paushok provides no factual or legal basis for us to simply imply the existence of a new debt based on the Share Purchase Agreement. Moreover, even if such a debt could be implied, it would still be commercial, rather than consumer, in nature because the agreement concerns the transfer of corporate shares in GEM from Paushok to Phoenix Sino Limited. *See* Joint App'x at 154–55 ("The Seller undertakes to assign shares and associated rights . . . to the Buyer."). Accordingly, the district court correctly held that the complaint failed to state a plausible FDCPA claim and properly dismissed the claim with prejudice.[3]

---

[3] To the extent Paushok argues that he should have been given leave to amend, we find that argument unpersuasive. "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Here, it is clear that the defect in Paushok's FDCPA claim is a substantive one that cannot be cured by pleading additional facts. Indeed, Paushok has failed to articulate any additional allegations that could transform these commercial

8

*          *          *

We have considered Paushok's remaining arguments and find them to be without merit.[4]

Accordingly, we **AFFIRM** the order and judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

---

transactions into a consumer debt for purposes of the FDCPA. Therefore, the district court did not err in failing to give Paushok leave to amend.

[4] Because we conclude that the complaint does not plausibly allege a "debt" under the FDCPA, we do not reach appellees' alternative argument that they are not "debt collectors" under the FDCPA.